| | |
|---|---|
| 1 | ROBBINS GELLER RUDMAN |
|   |    & DOWD LLP |
| 2 | SHAWN A. WILLIAMS (213113) |
|   | Post Montgomery Center |
| 3 | One Montgomery Street, Suite 1800 |
|   | San Francisco, CA 94104 |
| 4 | Telephone: 415/288-4545 |
|   | 415/288-4534 (fax) |
| 5 | shawnw@rgrdlaw.com |
| 6 | Attorneys for Plaintiff |
| 7 | [Additional counsel appear on signature page.] |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRETT BOEHNING, Individually and on Behalf of All Others Similarly Situated, | ) Case No. 3:21-cv-3671 |
| Plaintiff, | ) CLASS ACTION |
| vs. | ) COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| CONTEXTLOGIC INC., PIOTR SZULCZEWSKI, RAJAT BAHRI, BRETT JUST, JULIE BRADLEY, ARI EMANUEL, JOE LONSDALE, TANZEEN SYED, STEPHANIE TILENIUS, HANS TUNG, JACQUELINE RESES, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, BofA SECURITIES, INC., CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES INC., UBS SECURITIES LLC, RBC CAPITAL MARKETS, LLC, CREDIT SUISSE SECURITIES (USA) LLC, COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., ACADEMY SECURITIES, INC., LOOP CAPITAL MARKETS LLC and R. SEELAUS & CO., LLC, | ) |
| Defendants. | ) DEMAND FOR JURY TRIAL |

Plaintiff Jerrett Boehning ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by ContextLogic Inc. ("ContextLogic" or the "Company"), as well as media, conference call transcripts and analyst reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of ContextLogic pursuant or traceable to the Registration Statement and Prospectus issued in connection with ContextLogic's December 16, 2020 initial public stock offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act"), and open-market purchasers of ContextLogic common stock between December 16, 2020 and May 12, 2021, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Act of 1934 (the "1934 Act").  Defendants include ContextLogic, several of its current and former executives and directors, and the investment banking firms that served as underwriters in the IPO.

2.      Defendant ContextLogic is a San Francisco-based, global mobile ecommerce company that operates the Wish platform that connects its value-conscious user base to merchants. Founded in 2010, Wish is a global e-commerce platform that generates revenue by charging merchants a commission on sales made in its marketplace.  The Company also generates fees by offering advertising and logistics services to its merchants.  With a large range of beauty, clothing and electronics products sold at wholesale prices, Wish claims to have managed to swiftly garner a user base of 100 million monthly active users ("MAUs") and 500,000 merchants.  Wish targets value-conscious shoppers with incomes below $75,000 per year.  Unlike wealthier shoppers, this group of customers is extremely price sensitive and does not have as much affinity for convenience and branding, so purportedly does not mind buying sometimes off-brand wares from sometimes overseas merchants.  Wish gamifies the shopping experience, using features like sweepstakes to keep

customers coming back. Its discovery-based shopping experience leverages user-generated content like photos, videos and reviews – as well as what it professes to be "extensive data science capabilities" – to engage and grow its user base.

3. In the Registration Statement and Prospectus used to conduct the IPO (collectively, the "IPO Registration Statement") and throughout the Class Period, defendants made materially false and misleading statements about the strength of ContextLogic's business operations and financial prospects by overstating its then-present MAUs and MAU growth trends.

4. On December 16, 2020, ContextLogic completed its IPO in which it issued and sold 46 million shares of its Class A common stock at $24 per share, raising more than $1.1 billion in proceeds. In the IPO Registration Statement, ContextLogic repeatedly claimed to have had 108 million MAUs as of September 30, 2020, the end of the last interim quarter prior to its IPO. It stated there that it "define[d] MAUs as the number of unique users that visited the Wish platform, either on [its] mobile app, mobile web, or on a desktop, during the month," emphasizing the materiality of the metric to investors by stating: "We view the number of MAUs as key driver of revenue growth as well as a key indicator of user engagement and awareness of our brand."

5. Yet when ContextLogic reported its fourth quarter and fiscal year 2020 financial results for the period ended December 31, 2020 ("4Q20" and "FY20") on March 8, 2021, it disclosed that in reality, by the time of its December 2020 IPO, its MAUs had already "declined 10% YoY during Q4 to 104 million, primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition as the company worked through logistics challenges it faced earlier in the year."

6. On this news, the market price of ContextLogic common stock declined on March 8, closing down more than 10% at $15.94 per share on unusually high trading volume of more than 10 million shares trading. Yet the market price of ContextLogic common stock remained artificially inflated based on the Company's statements that day about its continued strong demand and its providing first quarter 2021 ("1Q21") sales guidance of $735 to $750 million, representing year-over-year growth of 67% to 70%.

7. Then on May 12, 2020, when ContextLogic announced 1Q21 financial results for the interim period ended March 31, 2021, it disclosed that its MAUs had declined another 7% to just 101 million. The Company's forward sales guidance also fell short, with its second quarter 2021 ("2Q21") revenue guidance of just $715 million to $730 million coming in significantly less than the $759 million the market had been led to expect and far less than the guidance of $735 to $750 million provided for 1Q21.

8. On this news, the market price of ContextLogic common stock declined $3.36 per share, or 29%, to close at $8.11 per share on May 13, 2021, on even more unusually high trading volume of more than 42 million shares trading, or more than 7 times the average daily volume over the preceding 10 trading days.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o], §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)], and SEC Rule 10b-5 [17 C.F.R. §240.10b-5]. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §27 of the 1934 Act and §22 of the 1933 Act.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §27 of the 1934 Act, as ContextLogic is headquartered in this District and many of the false and misleading statements alleged herein were disseminated from this District.

11. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

12. Plaintiff Jerrett Boehning purchased ContextLogic Class A common stock traceable to the IPO, as set forth in the accompanying certification incorporated by reference herein, and has been damaged thereby.

13. Defendant ContextLogic is a San Francisco, California-based global ecommerce provider. Since completing its IPO, ContextLogic Class A common stock has traded on the NASDAQ, an active market, under the ticker symbols "WISH." ContextLogic also has a privately

held Class B common stock that has 20 votes per share compared to the Class A's 1 vote per share. As of April 30, 2021, the Company had approximately 505 million shares of Class A common stock issued and outstanding and approximately 114 million shares of Class B common stock issued and outstanding.

14. Defendant Piotr Szulczewski ("Szulczewski") was, at all relevant times, the founder and Chief Executive Officer ("CEO") of ContextLogic and the Chairman of its Board of Directors (the "Board"). Due to his ownership of a substantial portion of the Company's super-voting rights Class B common stock, defendants concede that "[t]he dual class structure of our common stock has the effect of concentrating voting control with certain stockholders, in particular, our founder, CEO, and Chairperson, Piotr Szulczewski."

15. Defendant Rajat Bahri ("Bahri") was, at all relevant times, the Chief Financial Officer of ContextLogic.

16. Defendant Brett Just ("Just") was, at all relevant times, the Chief Accounting Officer of ContextLogic.

17. Defendants Julie Bradley, Ari Emanuel, Joe Lonsdale, Tanzeen Syed, Stephanie Tilenius and Hans Tung were directors of ContextLogic at the time of the IPO and signed the IPO Registration Statement.

18. Defendant Jacqueline Reses was identified as an incoming director in the IPO Registration Statement and was named a member of the Board on December 18, 2020 and was made Chairperson of the Board on May 12, 2021.

19. The defendants referenced above in ¶¶14-16 are sometimes referred to herein as the "Officer Defendants." The defendants referenced above in ¶¶14-18, each of whom signed or authorized the signing of the false and misleading Registration Statement used to conduct the IPO and are liable under the 1933 Act, are collectively referred to herein as the "Individual Defendants."

20. Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BofA Securities, Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., UBS Securities LLC, RBC Capital Markets, LLC, Credit Suisse Securities (USA) LLC, Cowen and Company, LLC, Oppenheimer & Co. Inc., Stifel, Nicolaus & Company, Incorporated, William Blair & Company,

L.L.C., Academy Securities, Inc., Loop Capital Markets LLC and R. Seelaus & Co., LLC, each investment banking firms that acted as underwriters of the IPO, helping to draft and disseminate the offering documents, are collectively referred to herein as the "Underwriter Defendants." Pursuant to the 1933 Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities. They served as the underwriters of the IPO and shared more than $52.4 million in fees collectively. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to merchandise ContextLogic stock in the IPO. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and the Officer Defendants, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b) The Underwriter Defendants also demanded and obtained an agreement from ContextLogic that ContextLogic would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that ContextLogic had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted ContextLogic and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of ContextLogic, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning ContextLogic's operations and financial prospects.

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with ContextLogic's lawyers,

management, and top executives and engaged in "drafting sessions" between at least August 2020 and December 2020.  During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which ContextLogic stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about ContextLogic would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and ContextLogic management and top executives, the Underwriter Defendants were negligent in not knowing of ContextLogic's existing problems as detailed herein.

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class (defined herein).

**BACKGROUND**

21. Unlike Amazon, which is largely U.S.-based, the cross-border e-commerce ContextLogic is attempting to provide presents logistics challenges and shortcomings in payments infrastructure.  For example, U.S. and European customers face significant challenges when returning a product to a China-based merchant.  The process is likely be long and complicated.  Language can also pose a challenge, despite translation tools being available.  Clearly, the same process is much easier where the merchant is a local seller.  While ContextLogic's customers are generally willing to trade convenience for affordability, many shoppers are not.  Moreover, for ContextLogic to win a sizable market share in worldwide e-commerce, it will have to fight off well-entrenched incumbents like Amazon, Target and Wal-Mart – and that is just in the United States.  These factors rendered ContextLogic's statements about its MAU growth trends very material to investors.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS - 6 -

**THE MATERIALLY FALSE AND MISLEADING
REGISTRATION STATEMENT**

22. On or about August 28, 2020, ContextLogic filed with the SEC a Form S-1 Registration Statement with the SEC which, after several amendments made pursuant to comments received from the SEC, was declared effective by the SEC on December 15, 2020. On December 16, 2020, *more than five-sixths of the way through ContextLogic's 4Q20,* ContextLogic priced the IPO at $24 per share and filed with the SEC its final Prospectus, which formed part of the Registration Statement, pursuant to which ContextLogic sold 46 million shares of common stock to the public.

23. The Registration Statement and the final Prospectus (collectively, the "IPO Registration Statement"), were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

24. The IPO Registration Statement characterized ContextLogic's Wish as "one of the largest and *fastest growing* global ecommerce platforms, connecting more than 100 million monthly active users ('MAUs' or 'monthly active users') in over 100 countries to over 500,000 merchants offering approximately 150 million items." The IPO Registration Statement repeatedly stated that ContextLogic had 108 million MAUs as of September 30, 2020. The IPO Registration Statement also emphasized the materiality of MAU growth, stating in pertinent part that the Company "view[ed] the number of MAUs as key driver of revenue growth as well as a key indicator of user engagement and awareness of [its] brand."

25. Concerning what it characterized as one of the "key metrics" that "measure[d] performance" and "identif[ied] trends affecting [its] business," MAU growth, the IPO Registration Statement emphasized that Wish's MAUs had grown exponentially from just 21 million at the end of fiscal 2015, to 30 million by the end of fiscal 2016, to 49 million by the end of fiscal 2017, to 73 million by the end of fiscal 2018, to 90 million by the end of fiscal 2019, and had grown from 81 million at the end of September 2019 to 108 million by the end of September 2020. Elsewhere,

ContextLogic emphasized the importance of its MAU growth as one of its "Key Milestones," graphically highlighting that growth in the IPO Registration Statement:



26. The statements referenced above in ¶¶23-25 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts that existed at the time of the IPO:

(a) that ContextLogic's 4Q20 MAUs had declined materially and were not then growing; and

(b) that as a result of the foregoing, defendants materially overstated the Company's business metrics and financial prospects.

27. Pursuant to Item 303 of Regulation S-K [17 C.F.R. §229.303], and the SEC's related interpretive releases thereto, including any known trends, issuers are required to disclose events or

uncertainties that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. At the time of the IPO, ContextLogic's 4Q20 MAUs had declined and the Company was no longer experiencing MAU growth. The adverse events and uncertainties associated with these facts were reasonably likely to have a material impact on ContextLogic's profitability, and, therefore, were required to be disclosed in the Registration Statement.

28. The IPO was successful for the Company and the underwriters. All 46 million shares of ContextLogic common stock were sold to the public at $24 per share in the IPO, raising more than $1.1 billion in gross proceeds for ContextLogic.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

29. Plaintiff incorporates ¶¶1-28 by reference.

30. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

31. The IPO Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein.

32. ContextLogic is the registrant for the IPO. The defendants named in this Count were responsible for the contents and dissemination of the Registration Statement.

33. As issuer of the shares, ContextLogic is strictly liable to plaintiff and the Class for any misstatements and omissions.

34. None of the defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

35. By reason of the conduct herein alleged, each defendant named in this Count violated, and/or controlled a person who violated, §11 of the 1933 Act.

36. Plaintiff acquired ContextLogic shares traceable to the Registration Statements for the IPO.

37. Plaintiff and the Class have sustained damages. The value of ContextLogic common stock has declined substantially subsequent to and due to these defendants' violations.

38. At the time of their purchases of ContextLogic shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### For Violation of §15 of the 1933 Act Against ContextLogic and the Individual Defendants

39. Plaintiff incorporates ¶¶1-38 by reference.

40. This Count is brought pursuant to §15 of the 1933 Act against ContextLogic and the Individual Defendants.

41. The Individual Defendants named in this Count were each control persons of ContextLogic at the time of the IPO by virtue of their positions as directors and/or senior officers of ContextLogic. The Individual Defendants named in this Count each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of ContextLogic. ContextLogic controlled the Individual Defendants named in this Count and all of ContextLogic's employees.

### FALSE AND MISLEADING CLASS PERIOD STATEMENTS

42. The Class Period starts on December 16, 2020, the first day ContextLogic common stock traded publicly. The IPO Registration Statement used to market the IPO opened characterizing ContextLogic's Wish as "one of the largest and *fastest growing* global ecommerce platforms, connecting more than 100 million [MAUs] in over 100 countries to over 500,000 merchants offering approximately 150 million items." Describing what it characterized as one of the "key metrics" that

"measure[d] performance" and "identif[ied] trends affecting [its] business," MAU growth, the IPO Registration Statement emphasized that Wish's MAUs had grown exponentially from just 21 million at the end of fiscal 2015, to 30 million by the end of fiscal 2016, to 49 million by the end of fiscal 2017, to 73 million by the end of fiscal 2018, to 90 million by the end of fiscal 2019, and had grown from 81 million at the end of September 2019 to 108 million by the end of September 2020. Indeed, the IPO Registration Statement stated repeatedly that Wish had 108 million MAUs at the end of September 2020.

43. The true facts, which were known by defendants throughout the Class Period but were not disclosed to the investing public were as follows:

(a) that ContextLogic's 4Q20 MAUs had declined materially and were not then growing; and

(b) that as a result of the foregoing, defendants materially overstated the Company's business metrics and financial prospects.

44. When ContextLogic reported its 4Q20 and FY20 financial results for the period ended December 31, 2020 on March 8, 2021, it disclosed that in reality, by the time of its December 2020 IPO, its MAUs had already "declined 10% YoY during Q4 to 104 million, primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition as the company worked through logistics challenges it faced earlier in the year."

45. On this news, the market price of ContextLogic common stock declined, closing down on March 8 more than 10% at $15.94 per share on unusually high trading volume of more than 10 million shares trading. Yet the market price of ContextLogic common stock remained artificially inflated based on the Company's statements that day about its continued strong demand and its providing 1Q21 sales guidance of $735 to $750 million, representing year-over-year growth of 67% to 70%.

46. Then on May 12, 2020, when ContextLogic announced 1Q21 financial results for the interim period ended March 31, 2021, it disclosed that its MAUs had declined another 7% to just 101 million. The Company's forward sales guidance also fell short, with its 2Q21 revenue guidance of

just $715 million to $730 million coming in significantly less than the $759 million the market had been led to expect and far less than the guidance of $735 to $750 million provided for 1Q21.

47. On this news, the market price of ContextLogic common stock declined $3.36 per share, or 29%, to close at $8.11 per share on May 13, 2021, on even more unusually high trading volume of more than 42 million shares trading, or more than 7 times the average daily volume over the preceding 10 trading days.

**APPLICATION OF PRESUMPTION OF RELIANCE:
FRAUD ON THE MARKET**

48. Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against defendants are predicated in large part upon omissions of material fact for which there was a duty to disclose.

49. Plaintiff will also rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a) defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) ContextLogic common stock traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of ContextLogic common stock; and

(e) plaintiff and other members of the Class purchased ContextLogic common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50. At all relevant times, the market for ContextLogic common stock was efficient for the following reasons, among others:

(a) as a regulated issuer, ContextLogic filed periodic public reports with the SEC; and

(b) ContextLogic regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on

major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## LOSS CAUSATION/ECONOMIC LOSS

51. During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of ContextLogic common stock and operated as a fraud or deceit on Class Period purchasers of ContextLogic common stock. As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of ContextLogic common stock fell precipitously, as the prior artificial inflation came out of the price of the stock. As a result of their purchases of ContextLogic common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## COUNT III

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against ContextLogic and the Officer Defendants

52. Plaintiff incorporates ¶¶1-51 by reference.

53. During the Class Period, ContextLogic and the Officer Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54. The defendants named in this Count violated §10(b) of the 1934 Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of ContextLogic common stock during the Class Period.

55. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ContextLogic common stock. Plaintiff and the Class would not have purchased ContextLogic common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by these defendants' misleading statements.

### COUNT IV

**For Violation of §20(a) of the 1934 Act**
**Against ContextLogic and the Officer Defendants**

56. Plaintiff incorporates ¶¶1-55 by reference.

57. The Officer Defendants acted as controlling persons of ContextLogic within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of ContextLogic common stock, the Officer Defendants had the power and authority to cause ContextLogic to engage in the wrongful conduct complained of herein. ContextLogic controlled the Officer Defendants and all of the Company's employees. By reason of their control and the conduct detailed herein, these defendants are liable pursuant to §20(a) of the 1934 Act.

### CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action as a class action on behalf of all persons who purchased or otherwise acquired ContextLogic common stock during the Class Period (the "Class"), including all persons or entities who acquired ContextLogic common stock pursuant and/or traceable to the Registration Statement on Form S-1 (Registration No. 333-250531), including the final Prospectus filed December 17, 2020 contained therein, as the same had been supplemented and issued in connection with the Company's December 16, 2020 IPO.

59. Excluded from the Class are defendants and their families, the officers and directors and affiliates of the defendants, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

60. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and

1  can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by ContextLogic or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

62. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

63. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(c) whether defendants violated the 1933 Act and the 1934 Act;

(d) whether statements made by defendants to the investing public omitted and/or misrepresented material facts about the business and operations of ContextLogic;

(e) whether – as to the 1934 Act claims *only* – defendants knew or deliberately disregarded that their statements were false and misleading;

(f) whether – as to the 1934 Act claims *only* – the price of ContextLogic common stock was artificially inflated; and

(g) to what extent the members of the Class have sustained damages and the proper measure of damages.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 17, 2021

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS

    s/ Shawn A. Williams
SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

|   |   |
|---|---|
| 1 |   |
| 2 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP |
| 3 | SAMUEL H. RUDMAN<br>MARY K. BLASY |
| 4 | 58 South Service Road, Suite 200<br>Melville, NY  11747 |
| 5 | Telephone:  631/367-7100<br>631/367-1173 (fax) |
| 6 | srudman@rgrdlaw.com<br>mblasy@rgrdlaw.com |

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
FrankJ@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF PLAINTIFF PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Jerrett Boehning, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

ContextLogic, Inc.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 2/26/2021 | 200 | $ 19.09 |
| 3/2/2021 | 160 | $ 18.660 |
| 3/25/2021 | 40 | $ 16.108 |
| 4/14/2021 | 200 | $ 14.300 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of May 2021.

DocuSigned by:

*Jerrett Boehning*
4DE16AFD57AD4ED...
Jerrett Boehning